J-A28018-18

2019 PA Super 2

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL A. LEHMAN | : | |
| | : | |
| Appellant | : | No. 1556 MDA 2017 |

Appeal from the Judgment of Sentence April 4, 2017
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0002000-1988

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

OPINION BY OLSON, J.: **FILED: JANUARY 4, 2019**

More than 28 years ago, the trial court sentenced Appellant, Michael A. Lehman, to the then-mandatory term of life imprisonment without the possibility of parole for a murder committed when he was 14 years old. On April 4, 2017, he was resentenced to 30 years to life imprisonment in light of intervening decisions of the Supreme Court of the United States. ***See Miller v. Alabama***, 567 U.S. 460 (2012); ***see also Montgomery v. Louisiana***, 136 S.Ct. 718 (2016). In addition, the trial court ordered him to pay costs associated with that resentencing.[1] Appellant appeals from that judgment of sentence, challenging the trial court's authority to sentence him for first-degree murder and to require payment of the costs. After careful

---

[1] The total costs imposed were $15,150.28. The bulk of the costs—$8,950.00—involved the examination and testimony of the Commonwealth's expert witness, Dr. Larry Rotenberg, who did not find Appellant to be irreparably corrupt.

consideration, we hold that, although Appellant's sentence of imprisonment is lawful, a trial court lacks authority to impose costs associated with a resentencing proceeding necessitated by the imposition of a prior illegal sentence. We, therefore, affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

In June 1988, Appellant was 14 years old. He and two other residents escaped from the Children's Home of York County ("the Home"). Appellant was apprehended. The same day, however, he fled the Home again. He, along with his confederates, then plotted to murder one of the Home's staff members. They returned to the Home and Appellant served as a lookout while his confederates viciously murdered the staff member by stabbing him 21 times.

Appellant was convicted of first-degree murder,[2] burglary,[3] robbery,[4] and criminal conspiracy.[5] On October 22, 1990, the trial court sentenced Appellant to the then-mandatory term of life imprisonment without the possibility of parole. *See* 18 Pa.C.S.A. § 1102(a) (West 1988) (requiring sentence of life imprisonment); 61 Pa.C.S.A. § 6137(a)(3) (West 1988)

_____

[2] 18 Pa.C.S.A. § 2502(a).

[3] 18 Pa.C.S.A. § 3502.

[4] 18 Pa.C.S.A. § 3701.

[5] 18 Pa.C.S.A. § 903.

(barring parole for individuals sentenced to life imprisonment). This Court affirmed. ***Commonwealth v. Lehman***, 606 A.2d 1231 (Pa. Super. 1991) (unpublished memorandum).

On October 8, 1998, Appellant filed his first petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. On May 26, 1999, the PCRA court denied the petition. This Court affirmed and our Supreme Court denied allowance of appeal. ***Commonwealth v. Lehman***, 754 A.2d 19 (Pa. Super. 2000) (unpublished memorandum), *appeal denied*, 764 A.2d 1066 (Pa. 2000). On July 1, 2010, Appellant filed his second PCRA petition. The PCRA court dismissed that petition on August 26, 2010. Again, this Court affirmed and our Supreme Court denied allowance of appeal. ***Commonwealth v. Lehman***, 34 A.3d 221 (Pa. Super. 2011) (unpublished memorandum), *appeal denied*, 34 A.3d 827 (Pa. 2011).

On August 21, 2012, Appellant filed his third PCRA petition in which he alleged that ***Miller*** entitled him to relief. In ***Miller***, the Supreme Court of the United States held that juvenile homicide offenders may not be sentenced pursuant to schemes that impose mandatory life imprisonment without the possibility of parole. ***Miller***, 567 U.S. at 469-489. Thereafter, in ***Commonwealth v. Cunningham***, 81 A.3d 1 (Pa. 2013), our Supreme Court held that ***Miller*** did not apply retroactively. ***Id.*** at 4-11. On November 20, 2013, the PCRA court dismissed Appellant's third petition based on ***Cunningham***. Bound by ***Cunningham***, this Court affirmed.

***Commonwealth v. Lehman***, 122 A.3d 1131 (Pa. Super. 2015) (unpublished memorandum).

The following year, resolving a split amongst state courts of last resort, the Supreme Court of the United States held that ***Miller*** applied retroactively. ***Montgomery***, 136 S.Ct. at 732-737. On March 16, 2016, Appellant filed his fourth PCRA petition. Prior to the PCRA court ruling on that petition, the United States District Court for the Middle District of Pennsylvania granted Appellant a writ of *habeas corpus* and ordered the trial court to resentence Appellant.[6] ***Lehman v. Commonwealth***, 15cv843 (M.D. Pa. Aug. 8, 2016).

On April 7, 2017, the trial court resentenced Appellant to an aggregate term of 30 years to life imprisonment. The trial court also ordered Appellant to pay costs associated with the resentencing proceedings. The Commonwealth filed a post-sentence motion challenging the discretionary aspects of Appellant's sentence. On September 18, 2017, the trial court denied the post-sentence motion. This timely appeal followed.[7]

Appellant presents three issues for our review:

1. Was [Appellant] granted relief under the [PCRA] or pursuant to a petition for a writ of *habeas corpus*?

---

[6] Although it was not titled as such, nor did it include the normal language associated therewith, we believe that it was a conditional writ.

[7] Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

- 4 -

2. [Did the trial court impose an illegal sentence by ordering Appellant to serve 30 years to life imprisonment?

3. Did the trial court impose an illegal sentence by ordering Appellant to pay the costs associated with the resentencing proceedings?]

Appellant's Brief at 3.[8]

In his first issue, Appellant argues that he obtained relief pursuant to the writ of *habeas corpus* issued by the United States District Court for the Middle District of Pennsylvania and not because the PCRA court granted him relief. This issue is moot because the trial court resentenced Appellant. ***Cf. In re S.H***., 71 A.3d 973, 976 (Pa. Super. 2013) (citation omitted) ("If events occur to eliminate the claim or controversy at any stage in the process, the [issue] becomes moot."). For purposes of the central issues presented in this appeal from Appellant's judgment of sentence, it is immaterial whether Appellant was before the trial court for resentencing pursuant to an order issued under the PCRA or the writ of *habeas corpus* issued by the United States District Court for the Middle District of Pennsylvania. Accordingly, we decline to address Appellant's first issue.

In his second issue, Appellant argues that the trial court imposed an illegal sentence by ordering him to serve 30 years to life imprisonment for his first-degree murder conviction.[9] According to Appellant, there was no

---

[8] We have re-numbered the issues for ease of disposition.

[9] We note that this argument was made by an attorney that withdrew his appearance during the pendency of this appeal.

statutory authority by which the trial court could sentence Appellant for first-degree murder because 18 Pa.C.S.A. § 1102, when combined with 61 Pa.C.S.A. § 6137(a)(3), was deemed unconstitutional in **Miller**. Appellant argues that the trial court was required to (1) sentence him for third-degree murder, a crime he was not convicted of committing, or (2) discharge him. We review an illegal sentencing claim *de novo* and our scope of review is plenary. **Commonwealth v. White**, 193 A.3d 977, 985 (Pa. Super. 2018) (citation omitted).

Our Supreme Court and this Court have rejected Appellant's argument on numerous occasions. **E.g. Commonwealth v. Batts**, 163 A.3d 410, 421 (Pa. 2017); **Commonwealth v. Olds**, 192 A.3d 1188, 1193 (Pa. Super. 2018); **Commonwealth v. Foust**, 180 A.3d 416, 430 (Pa. Super. 2018); **Commonwealth v. Seskey**, 170 A.3d 1105, 1106 (Pa. Super. 2017).[10] Pursuant to these binding decisions, the trial court was required to impose a sentence for first-degree murder. The sentencing options available to the trial court offered no mandatory minimum and a mandatory maximum term of life

---

[10] Appellant was sentenced after our General Assembly enacted 18 Pa.C.S.A. § 1102.1(a), which sets forth the mandatory minimum for juveniles convicted of first-degree murder. That statute, however, only applies to juveniles convicted of committing crimes that occurred after June 24, 2012. **See** 18 Pa.C.S.A. § 1102.1(a). Nonetheless, we note that a 14-year-old convicted of first-degree murder for an offense that occurred after June 24, 2012 faces a 25-year mandatory minimum. **See** 18 Pa.C.S.A. § 1102.1(a)(2).

imprisonment. The trial court imposed such a sentence. Hence, Appellant's sentence of 30 years to life imprisonment was legal.

In his final issue, Appellant argues that the trial court imposed an illegal sentence by ordering him to pay costs associated with his resentencing proceedings, which came about because of the illegality of his original sentence. In essence, Appellant's claim is that expenses incurred by reason of resentencing proceedings undertaken after the initial imposition of an unlawful sentence fall outside the trial court's authority to impose costs. The Commonwealth, on the other hand, contends that Appellant's claim challenges the discretionary aspects of his sentence. Because Appellant challenges the trial court's authority to impose costs as part of its resentencing order, we conclude that the Appellant's claim implicates the legality of his sentence and, thus, he was not required to include a statement pursuant to Pennsylvania Rule of Appellate Procedure 2119(f) in his brief or to raise the issue before the trial court. **See Commonwealth v. Robinson**, 7 A.3d 868, 871 (Pa. Super. 2010). We apply a *de novo* standard of review to such a claim and our scope of review is plenary. **See White**, 193 A.3d at 985 (citation omitted).

Preliminarily, we set forth the legal framework governing this issue. It is unclear from the record whether the trial court imposed costs pursuant to

the common law, pursuant to 16 P.S. § 4403,[11] or both.[12] Ultimately, we conclude that it is immaterial for purposes of this decision whether costs were imposed under the common law, section 4403, or both because the result is the same. Hence, we set forth the framework for both the common law and section 4403.

_____

[11] Section 4403 provides that

> All necessary expenses incurred by the district attorney or his assistants or any officer directed by him in the investigation of crime and the apprehension and prosecution of persons charged with or suspected of the commission of crime shall be paid by the county from the general funds of the county, upon the approval of the bill of expenses by the district attorney and the court. In any case where a defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant.

16 P.S. § 4403.

In its opinion, the trial court cited 16 P.S. § 7708, however, section 7708 only governs cases in counties of the first-class. Section 4403 governs cases in counties of the second-class. As Montgomery County is a county of the second-class, **Feldman v. Hoffman**, 107 A.3d 821, 823 n.1 (Pa. Cmwlth. 2014), *appeal denied*, 121 A.3d 497 (Pa. 2015), section 4403 is the relevant statute.

[12] The Commonwealth cites 42 Pa.C.S.A. § 9728(g) in support of its argument that Appellant was responsible for costs related to his resentencing. That statute is inapposite because that statute addresses "costs associated with the collection of restitution, transportation costs and other costs associated with the prosecution[.]" 42 Pa.C.S.A. § 9728(g). It does not address costs borne by the district attorney in prosecuting a case. Such costs are governed by Section 64 and section 4403. **Cf.** 1 Pa.C.S.A. § 1933 (a specific statute controls over a general statute).

The Judicial Code provides that, "The governing authority shall prescribe by general rule the standards governing the imposition and taxation of costs, including the items which constitute taxable costs, the litigants who shall bear such costs, and the discretion vested in the courts to modify the amount and responsibility for costs in specific matters."  42 Pa.C.S.A. § 1726(a).  Our Supreme Court has not, pursuant to section 1726(a), prescribed by general rules such standards in criminal cases.

As our Supreme Court explained:

The Judicial Code was created by the Judiciary Act of 1976, which, in conjunction with the Judiciary Act Repealer Act (["]JARA["]) and the Judiciary Act Repealer Act of 1980 [], represented the culmination of a ten year effort to achieve the first complete judicial codification in Pennsylvania's history.

Although the Judicial Code was enacted in 1976, it did not take effect until June 27, 1978, the effective date of JARA.  The primary purpose of JARA [], was to repeal those statutes which had been supplanted by the Code.  [JARA] expressly repealed parts or all of more than 1500 statutes, comprising approximately 6000 sections of Purdon's Pennsylvania Statutes, enacted between 1700 and 1977.

***Chartiers Valley Sch. Dist. v. Twp. of Ross***, 462 A.2d 673, 675 (Pa. 1983) (cleaned up).

JARA contained a savings clause, which provided that:

General rules promulgated pursuant to the Constitution of Pennsylvania and the Judicial Code in effect on the effective date of the repeal of a statute, shall prescribe and provide the practice and procedure with respect to the enforcement of any right, remedy or immunity where the practice and procedure had been governed by the repealed statute on the date of its repeal. If no such general rules are in effect with respect to the repealed statute on the effective date of its repeal, the practice and

procedure provided in the repealed statute shall continue in full force and effect, as part of the common law of the Commonwealth, until such general rules are promulgated.

Act 53 of 1978 § 3(b), 1978 P.L. 202, 352.

At the time the Judicial Code was enacted, costs in criminal cases were primarily governed by Section 64 of the Criminal Procedure Act of 1860 ("Section 64"), 1860 P.L. 427, 445. *See* 19 P.S. § 1223 (repealed).[13] Hence, pursuant to JARA's savings clause, Section 64 is part of our Commonwealth's common law. Section 64 provided that "in all cases of conviction of any crime, all costs shall be paid by the party convicted; but where such party shall have been discharged, according to law, without payment of costs, the costs of prosecution shall be paid by the county[.]" *Id.*

As previously noted, section 4403 sets forth the statutory language that controls the costs at issue in this case. That statute governs the payment of all necessary expenses incurred by the district attorney, and his or her assistants and officers.

Having set forth the legal framework governing the assessment of costs, we now consider whether Section 64 and section 4403 permit the imposition of costs for resentencing following an illegal sentence. Under both provisions "trial court[s] must carefully examine [the totality of the circumstances.

---

[13] The Criminal Procedure Act of 1860 was repealed by JARA. *See* Act 53 of 1978 § 2, 1978 P.L. 202, 232.

Assessable] costs are those which are necessary for prosecution when considered in light of the peculiar facts and circumstances of each case[.]" *Commonwealth v. Garzone*, 993 A.2d 1245, 1258 (Pa. Super. 2010), *aff'd*, 34 A.3d 67 (Pa. 2012).

We are aware of only two, non-binding, decisions addressing the assessment of costs after an original judgment of sentence was imposed. In *Commonwealth v. Morales-Rivera*, 67 A.3d 1290 (Pa. Cmwlth. 2013), the Commonwealth Court held that the trial court had the authority to order the defendant to pay costs associated with his PCRA hearing. *Id.* at 1294. In *United States ex rel. Brink v. Claudy*, 96 F.Supp. 220 (W.D. Pa. 1951), the district attorney sought costs associated with defending a federal *habeas corpus* petition. The United States District Court for the Western District of Pennsylvania found that the district attorney was entitled to such costs under Pennsylvania law; however, the district attorney must seek those costs in state court. *Id.* at 224. We do not find *Morales-Rivera* or *Brink* persuasive for the issue presented in this case. In both *Morales-Rivera* and *Brink*, the defendants were denied relief within the context of their respective post-conviction proceedings. In this case, the resentencing hearing was the result of Appellant's successful litigation of his *habeas corpus* petition in the United States District Court for the Middle District of Pennsylvania. Hence, we turn

to analogous cases and general tools of statutory interpretation[14] to guide our decision.

We acknowledge that Section 64's language differs from section 4403's language insofar as section 4403 uses the words "necessary expenses" and Section 64 uses the words "all costs." We conclude, however, that construing Section 64 differently than section 4403 would lead to absurd results. Under the current Statutory Construction Act, and the law that preceded it, we must interpret statutes to avoid such absurd results. **See** 1 Pa.C.S.A. § 1922(1).[15] If we interpreted the word "all" literally, a defendant could be forced to pay costs associated with lighting and heating the courtroom in which he or she was tried. A defendant could also be forced to pay for out-of-town jurors to stay at the Ritz-Carlton. These are absurd results. Hence, we conclude that the word "all" in Section 64 means "necessary" as in section 4403. For this reason, we conclude that if costs are not "necessary" they are not authorized under either Section 64 or section 4403.

We agree with the learned trial judge that this case is most analogous to **Commonwealth v. Weaver**, 76 A.3d 562 (Pa. Super. 2013), *aff'd*, 105

---

[14] Although Section 64 is now part of our common law and is no longer a statute, we believe that as it was formerly a statute it should be interpreted according to the general tools of statutory construction.

[15] Prior to passage of the Statutory Construction Act, statutes were construed pursuant to Act 282 of 1937, 1937 P.L. 1019. Act 282 contained operative language identical to that of section 1922(1). **See** Act 282 of 1937 § 52(1), 1937 P.L. 1019, 1024.

A.3d 656 (Pa. 2014) (*per curiam*). In that case, the Commonwealth charged the defendant with driving under the influence of drugs. The criminal information alleged that morphine was present in his blood while he operated his motor vehicle. Similarly, a pre-trial report presented to the defendant indicated that a laboratory found morphine in his blood. At trial, the Commonwealth called a laboratory employee to testify regarding the test results. That witness, however, testified that benzodiazepines were found in the defendant's blood. At that point, the trial court declared a mistrial and permitted the Commonwealth to amend the criminal information.

At the retrial, a different laboratory employee testified and the defendant was convicted. At sentencing, the trial court ordered the defendant to pay costs associated with the laboratory employees' testimony at both trials. The defendant filed a post-sentence motion arguing that he should not be responsible for paying costs associated with the laboratory employee's testimony at the second trial. The trial court granted the post-sentence motion and amended the judgment of sentence so that the defendant was responsible for paying the costs for the laboratory employee's testimony only at the first trial. The Commonwealth appealed that determination to this Court and this Court affirmed the trial court's decision not to impose costs related to the second trial.

The costs of resentencing in this case arose because Appellant elected to exercise his rights under **Miller** and **Montgomery**. This is akin to the

circumstances in **Weaver**, where the defendant "chose" to exercise his constitutional right to due process of law by being informed of the charges against him prior to trial. In **Weaver**, this Court held that the Commonwealth was responsible for the costs of the second trial. This is sensible because it is well-settled that a defendant may not be punished for exercising his or her constitutional rights. **Commonwealth v. Speight**, 854 A.2d 450, 455 (Pa. 2004); **United States v. Goodwin**, 457 U.S. 368, 372 (1982). If we held that Appellant was responsible for paying the costs associated with resentencing, we would punish him for exercising his constitutional right to receive a sentence that comports with the Eighth Amendment of the United States Constitution (as incorporated against the states via the Fourteenth Amendment). Thus, although Appellant "chose" to receive a constitutional sentence by filing his PCRA petition and petition for a writ of *habeas corpus*, that does not entitle the Commonwealth to recover the costs associated with the resentencing process.

Additionally, in affirming the trial court's decision limiting the defendant's payment of costs associated with the laboratory employee's testimony in only the first trial, this Court in **Weaver** explained that a defendant is not responsible for costs that are a result of certain actions by the Commonwealth. **Weaver**, 76 A.3d at 574. In reaching that decision, this Court relied on our Supreme Court's decision in **Commonwealth v. Coder**, 415 A.2d 406 (Pa. 1980). In **Coder**, our Supreme Court held that the

defendant was responsible for paying the costs associated with a change in venue. Our Supreme Court explained, however, that when "the prosecution is primarily responsible for the conditions which necessitate the change of venue, the defendant should be absolved of the costs incident to the change of venue." *Id.* at 409 n.4. This Court reasoned that *Coder* indicates that the Commonwealth must bear the costs of prosecution when the Commonwealth is responsible for the increase in costs. *Weaver*, 76 A.3d at 574. In other words, costs are not "necessary" if they would not have arisen but for the Commonwealth's actions. *See id.*

While we recognize that the situation in *Weaver* does not align perfectly with the circumstances presently before us, we nonetheless believe that *Weaver* supplies the principle to be applied here. In *Weaver*, the costs were accrued as a result of actions taken by the Commonwealth through the district attorney. We see no reason to differentiate between the actions taken by the Commonwealth in prosecuting an action from the actions taken by the Commonwealth in enacting a statute that is later declared to be unconstitutional. There was no action taken by the defendant in *Weaver* or Appellant in this case which necessitated the further proceedings for which costs were imposed. In both situations, the additional costs would not have

arisen but for the actions of the Commonwealth.[16]   Thus, when further proceedings are not necessitated by the actions of the defendant and the defendant obtains relief as a result of those proceedings, the Commonwealth should bear the risk of paying the additional costs.

Finally, a defendant can expect to be held financially liable for the costs associated with a sentencing proceeding when he or she commits a crime.  A defendant does not, however, reasonably expect to be financially responsible for the costs associated with resentencing necessitated by changes in law many years later.  This reasonable expectation has played an important role in our Supreme Court's jurisprudence in this area of the law.  In **Coder**, our Supreme Court justified requiring the defendant to pay the costs associated with the change in venue by noting that

> when a person commits a crime which stirs wide community interest, either because the crime is heinous or its perpetrator is a person invested with a public trust, publicity will follow inevitably.  The ensuing publicity should be **readily foreseeable by the perpetrator** of the crime, so that it is neither arbitrary, capricious nor unreasonable to hold him responsible for the dysfunction his conduct caused the criminal justice system.

---

[16] We are cognizant of the fact that, at the time our General Assembly passed 18 Pa.C.S.A. § 1102(a) and 61 Pa.C.S.A. § 6137(a)(3), they were constitutional as applied to juveniles and the Supreme Court of the United States upheld similar statutes for decades after their enactment.  However, we believe that, once the sentencing statutes are declared to be unconstitutional necessitating a resentencing, a defendant, who originally received what is deemed to be an illegal sentence, should not be responsible for the costs associated with the resentencing.

***Coder***, 415 A.2d at 409 (emphasis added; citation omitted). In other words, our Supreme Court held that the defendant could be required to pay the costs associated with the change in venue because that change in venue was reasonably foreseeable at the time the defendant committed the crime in question. As explained above, it was not reasonably foreseeable that Appellant would receive an illegal sentence and later be resentenced. Accordingly, we hold that the trial court lacked the authority to order Appellant to pay costs associated with the resentencing proceedings.

In sum, the trial court had the authority to sentence Appellant to 30 years to life imprisonment for his first-degree murder conviction. We hold that the trial court lacked the authority to order Appellant to pay the costs associated with the resentencing necessitated by evolution of constitutional law. Accordingly, we affirm Appellant's judgment of sentence in part, vacate it in part, and remand for further proceedings consistent with this opinion.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/04/2019

- 17 -